IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SANTANA RILES, # M-54574, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-1630-MJR |
| | ) |
| J. MARTIN, | ) |
| KENT BROOKMAN, | ) |
| LISA GOLDMAN, | ) |
| JOHN DOE #1 & #2 (C/O's/ | ) |
| Transport Officers), | ) |
| MELISSA PAPPAS, | ) |
| ROBERT MOONEY, | ) |
| TERRA RACTLEY, | ) |
| and JOHN BALDWIN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Santiago Riles, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Some of his claims arose while he was previously confined at Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff's Complaint (Doc. 1), which includes claims of deliberate indifference to his serious mental health conditions and other medical needs, improper punishment with segregation under inhumane conditions, and due process violations, is now before the Court for a preliminary merits review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be

1

granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

Additionally, the Court must consider whether all of Plaintiff's claims may appropriately proceed together in the same lawsuit. This initial review reveals that 2 of Plaintiff's claims are not properly joined in this action. These improperly joined claims shall therefore be severed into separate cases, where they shall undergo the required § 1915A evaluation.

## The Complaint

The Complaint includes the following allegations: On November 27, 2017, Plaintiff was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 1, p. 6). He began having a psychotic episode with voices telling him to kill himself, and he asked C/O Martin and several other C/O's to get him a crisis team. They refused, and C/O Martin profanely told Plaintiff to "go ahead and kill yourself." *Id.* Plaintiff set his bed on fire in a suicide attempt. (Doc. 1, p. 7). Martin and others dragged Plaintiff out of the cell "choking and foaming at the mouth" due to smoke inhalation. Plaintiff was given no medical attention, and was sent on an emergency transfer to Menard. (Doc. 1, pp. 7-8).

On the way to Menard, Plaintiff asked the transporting officers (John Doe C/O's #1 and #2) about the transfer of his property. (Doc. 1, p. 8). They responded that if anybody asked, they would say it burned up in the fire.

Plaintiff saw a mental health provider after arriving at Menard, and reported his suicide attempt. (Doc. 1, p. 9). He was placed on suicide watch for two days. *Id.*

On November 29, 2017, Plaintiff was served with a disciplinary ticket charging him with 3 offenses for setting his bed on fire at Pinckneyville on November 27. (Doc. 1, p. 10; Doc. 1-1,

pp. 7-8). Brookman heard the ticket on December 5, 2017, but no mental health professional was present, nor had a mental health review been conducted, despite Plaintiff's previous designation as a seriously mentally ill ("SMI") prisoner. (Doc. 1, pp. 10-13). Dr. Goldman (Psychiatric Administrator) was responsible for adhering to the relevant parts of the Illinois Administrative Code and the settlement agreement in *Rasho v. Baldwin*[1] regarding disciplinary actions involving SMI inmates. (Doc. 1, p. 11). Brookman accepted Plaintiff's guilty plea and punished him with 6 months segregation, without contacting Plaintiff's requested witness. (Doc. 1, p. 12; Doc. 1-1, pp. 9-11). Baldwin denied Plaintiff's grievance over the disciplinary action, as well as later grievances on other issues. (Doc. 1, pp. 13, 20, 29).

Plaintiff served 170 days out of the 180 days of his segregation punishment (his segregation time was eventually cut). (Doc. 1, p. 14). He claims that his conditions of confinement were unusually harsh, and exacerbated his mental health problems. In particular, while in segregation, Plaintiff suffered a bite from a venomous spider which led to a MRSA infection; was denied adequate mental health treatment; suffered emotional/psychological distress which led to 2 more suicide attempts as well as other self-harm; was tricked into taking psychiatric medications that he had previously refused; was exposed to smoke from a fire set by another inmate; and was required to serve an extra 20 days in segregation beyond his correct release date. (Doc. 1, pp. 14-15).

Plaintiff raises a claim of deliberate indifference against Nurse Ractley, who delayed necessary treatment for the spider bite when she failed to follow medical protocol to give Plaintiff antibiotics and refer him to a doctor. (Doc. 1, pp. 15-17).

MHP (Mental Health Professional) Pappas failed to provide Plaintiff with mental health

---

[1] *Rasho v. Baldwin*, Case No. 07-cv-1298-MMM (C.D. Ill.). Plaintiff attaches a portion (pp. 23-26 of Doc. 711-1) of the settlement agreement he references at Doc. 1-1, pp. 30-33, which includes provisions regarding discipline of SMI offenders.

treatment, for example, refusing to help him calm down or move to a different cell on December 1, 2017, when he was banging his head against the door, and punching and yelling in an attempt to silence the voices in his head. (Doc. 1, pp. 17-18). Pappas developed a mental health treatment plan with Plaintiff in January 2018, but failed to follow it during his remaining months in segregation (for example, Pappas never provided Plaintiff with one-on-one therapy). (Doc. 1, pp. 20-22). Goldman did nothing in response to Plaintiff's complaints.

On January 9, 2018, MHP Mooney wrote Plaintiff a disciplinary ticket for intimidation and threat, after Plaintiff demanded to know the status of his RTU (Residential Treatment Unit) referral. (Doc. 1, p. 18). Brookman gave Plaintiff 30 more days in segregation for that ticket, despite numerous errors in the document. (Doc. 1, pp. 19-20). The mental health team had recommended 3 more months for the ticket.

On May 13, 2018, Plaintiff attempted suicide again, by consuming a large quantity of pills. (Doc. 1, pp. 22-23). Five days earlier, Plaintiff had reported his suicidal feelings to Mooney and asked for counseling, but Mooney failed to respond. Plaintiff made the suicide attempt because he was being forced to serve more time in segregation than he was scheduled to do, after having been in segregation for 9 months total. (Doc. 1, pp. 23-25). Because of several reductions in his segregation time,[2] Plaintiff was to have been released on May 18, 2018, but officials failed to discharge him on time despite his repeated requests to Pappas and others. Two emergency grievances were accepted on May 24, 2018, but no immediate action was taken to release Plaintiff. (Doc. 1, pp. 25-26).

---

[2] Plaintiff makes several references to "restoration" of his "good time," but it appears from his documentation that he was never actually punished with a loss of good conduct credits (which would increase the portion of his sentence that must be served in prison before he would be eligible for release on parole) as a result of the disciplinary actions. (Doc. 1, pp. 20, 22, 25; Doc. 1-1, pp. x). The Court presumes, therefore, that Plaintiff is referring to a reduction in his term of segregation confinement, rather than a restoration of lost good conduct credits.

On May 24, 2018, Plaintiff made another suicide attempt, this time by chewing and swallowing a double-A battery. (Doc. 1, p. 26). He was taken to the hospital, then placed on suicide watch upon his return, in a cell under intolerable conditions that interfered with sleep and exacerbated Plaintiff's psychological symptoms. (Doc. 1, p. 27). After his requests to be moved were ignored, he stabbed staples through his eyelids. (Doc. 1, pp. 27-28).

Plaintiff was finally released from segregation on June 8, 2018, 20 days after he should have been discharged – and 15 days after the grievance officer and clinical services concluded he was entitled to release. (Doc. 1, pp. 28-29).

Plaintiff seeks declaratory relief, injunctive relief directing his transfer to a less restrictive prison with more mental health services, and prohibiting Defendants from retaliating against him, and compensatory and punitive damages. (Doc. 1, pp. 35-37).

## **Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[3]

> **Count 1:** Eighth Amendment deliberate indifference claim against C/O Martin (Pinckneyville), for failing to summon a crisis team for Plaintiff and telling him to go ahead and kill himself;
>
> **Count 2:** Fourteenth Amendment claims against Brookman, for depriving Plaintiff of a liberty interest without due process, by imposing 6 months segregation for the November 27, 2017, disciplinary ticket and another 30 days

---

[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

5

segregation for the January 9, 2018, ticket;

**Count 3:** Eighth Amendment deliberate indifference claims against Goldman, Pappas, and Mooney, for failing to provide Plaintiff with necessary mental health treatment;

**Count 4:** Fourteenth Amendment due process claims against John Does #1 and #2, for depriving Plaintiff of his property in connection with his transfer from Pinckneyville to Menard;

**Count 5:** Eighth Amendment deliberate indifference claim against Ractley, for failing to promptly treat Plaintiff's venomous spider bite;

**Count 6:** Claims against Baldwin for denying Plaintiff's grievances.

### Severance of Claims

Counts 1 and 5 are not transactionally related to the other claims. Under Rule 20(a)(2), a "plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Wright, Miller, & Kane, 7 Federal Practice & Procedure Civ. 3d § 1655 (West 2017). The alleged misconduct by Martin in Count 1 occurred at Pinckneyville, and is unrelated to the claims that arose in Menard. Ractley's alleged deliberate indifference in Count 5 arose from a distinct transaction and has no common questions of law or fact with the other claims. Counts 1 and 5 shall therefore be severed into 2 separate cases, where they shall undergo a merits review pursuant to 28 U.S.C. § 1915A. *See* FED. R. CIV. P. 18, 20, 21; *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

As shall be discussed below, a portion of Count 2 and Count 3 survive § 1915A review and shall proceed in this action. Counts 4 and 6 shall be dismissed for failure to state a claim upon which relief may be granted.

### Count 2 – Due Process - Brookman

As to the November 27, 2017, disciplinary action which resulted in 6 months of segregation, Plaintiff asserts that he asked for a witness, but Brookman did not attempt to contact the witness and falsely stated no witness was requested. Further, no mental health professional was consulted or took part in the disciplinary proceedings, and Brookman failed to consider whether Plaintiff's serious mental illness contributed to the conduct that led to the disciplinary charges. (Doc. 1, pp. 10-12). Plaintiff notes that he did admit setting the fire in his cell at Pinckneyville, but tried to explain that his actions were a suicide attempt. (Doc. 1, p. 12; Doc. 1-1, p. 9). These omissions in the disciplinary proceeding raise a question regarding whether Brookman complied with procedural due process requirements. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (due process includes the right to call witnesses if prison safety allows).

Further, the length of Plaintiff's disciplinary confinement, and his allegations that the conditions of that confinement imposed "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life," indicate that further inquiry into this due process claim is appropriate. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). Plaintiff may therefore proceed with the portion of Count 2 that is based on the November 27, 2017, disciplinary ticket (for setting the bed on fire at Pinckneyville).

However, the portion of Count 2 that concerns Plaintiff's January 9, 2018, ticket shall be dismissed. That ticket was issued by Mooney, and adjudicated by Brookman. Plaintiff notes various technical flaws in the ticket which were later corrected, and states that his original punishment was only 30 days in segregation. (Doc. 1, pp. 19-20, 24). This amount of time is insufficient to trigger due process concerns. *See Marion*, 559 F.3d at 698. Moreover, that 30-

7

day punishment was later reduced to a verbal reprimand, after Plaintiff's grievance over the ticket resulted in a remand and re-issuance of the ticket. (Doc. 1, p. 24). Plaintiff therefore cannot maintain a due process claim upon which relief may be granted based on the January 9, 2018 ticket.

**Count 2** for deprivation of a liberty interest without due process shall proceed against Brookman, but only with reference to the November 27, 2017, disciplinary ticket.

### Count 3 – Deliberate Indifference to Serious Mental Health Condition

The Seventh Circuit has found that "the need for a mental illness to be treated could certainly be considered a serious medical need." *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). Here, Plaintiff asserts that mental health professionals Goldman, Pappas, and Mooney were aware of his serious mental health diagnoses. On several occasions, Plaintiff begged them for counseling or other interventions to address his symptoms, which were exacerbated by the conditions of his lengthy segregation confinement. He further points out that none of these Defendants played any role in the disciplinary proceeding where he was given 6 months in segregation, where they should have assisted the hearing officers to consider the effects of that punishment on his mental health. Plaintiff blames these Defendants, in part, for failing to assist him when he sought help for his extreme distress and decompensation over being continuously held in segregation past the date he was to have been released, which led to another suicide attempt and self-harm. (Doc. 1, pp 25-28).

At this stage of the case, Plaintiff has sufficiently pled that Goldman, Pappas, and Mooney failed to take steps to mitigate the serious risk of harm posed by his mental illness. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). He may therefore proceed with the deliberate indifference claims in **Count 3**.

At this time, Counts 2 and 3 may proceed together in this action, as both involve factual questions relating to the disciplinary proceeding on the November 27, 2017, disciplinary ticket.

**Dismissal of Count 4 – Deprivation of Property**

Plaintiff's claim for loss of his personal property cannot be brought in this Court. To state a claim under the Due Process Clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of property *without due process of law* – but if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995).

Plaintiff's civil rights claim in **Count 4** against John Does #1 and #2 for depriving him of his property shall therefore be dismissed with prejudice. However, this dismissal shall not preclude Plaintiff from pursuing a remedy in the appropriate state court, if he wishes to do so. The Court makes no comment on the merits or timeliness of such a claim.

**Dismissal of Count 6 - Grievances**

The Complaint does not indicate that IDOC Director Baldwin was personally involved in any of the events that allegedly violated Plaintiff's civil rights. Baldwin merely affirmed the denial of several grievances Plaintiff filed to protest the actions of other officials. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Further, Baldwin's position as Director does not make him liable for the

misconduct of others under his supervision, because the doctrine of *respondeat superior* (supervisory liability) does not apply in civil rights actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). **Count 6** shall therefore be dismissed from the action with prejudice for failure to state a claim upon which relief may be granted.

### Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) is **DENIED** at this time without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). In determining whether to recruit counsel, the Court considers two factors. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff's motion demonstrates that he has satisfied the first of these, by making a reasonable attempt to obtain counsel. (Doc. 3, pp. 1-3). However, at this early stage, it appears that Plaintiff is competent to litigate the case himself. *See Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010). While Plaintiff states that he has only a 9th grade education and has been diagnosed with bipolar disorder with psychosis (Doc. 3, p. 3), his Complaint is clear, well-organized, and competently articulates his legal claims. Although the motion is denied at this juncture, Plaintiff may renew his request for counsel if necessary, as the case progresses.

### Disposition

**COUNTS 4 and 6** are **DISMISSED** with prejudice for failure to state a constitutional claim upon which relief may be granted. Defendants **JOHN DOE #1 and #2** and **BALDWIN** are **DISMISSED** from this action without prejudice.

**IT IS HEREBY ORDERED** that pursuant to Federal Rule of Civil Procedure 20(a)(2), the claims in **COUNTS 1 and 5** are **SEVERED** into two new cases as follows:

**First Severed Case: Count 1 –** Eighth Amendment deliberate indifference claim against C/O Martin (Pinckneyville), for failing to summon a crisis team for Plaintiff and telling him to go ahead and kill himself.

**Second Severed Case: Count 5 –** Eighth Amendment deliberate indifference claim against Ractley, for failing to promptly treat Plaintiff's venomous spider bite.

In each new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order
(2) The Original Complaint and Exhibits (Docs. 1, 1-1, and 1-2)
(3) Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)

Further instructions to Plaintiff will be provided by separate Order entered in each new severed case after it is opened and the new case number is assigned.

**IT IS FURTHER ORDERED** that the *<u>only claims remaining in this action are COUNT 2 against BROOKMAN, and COUNT 3 against GOLDMAN, PAPPAS, and MOONEY.</u>* This case shall now be captioned as: **SANTANA RILES, Plaintiff, vs. KENT BROOKMAN, LISA GOLDMAN, MELISSA PAPPAS, and ROBERT MOONEY, Defendants.**

**IT IS FURTHER ORDERED** that Defendants **MARTIN and RACTLEY** are **TERMINATED** from *this* action with prejudice.

As to **COUNTS 2 and 3**, which remain in the instant case, the Clerk of Court shall prepare for Defendants **BROOKMAN, GOLDMAN, PAPPAS, and MOONEY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps

to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 10, 2018**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court
